**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**CASE NO. 1:17-cv-06222-GHW**

MCGRAW-HILL GLOBAL EDUC. HOLDINGS,
ET AL.,

                 Plaintiff,

v.

TURCIOS, ET AL.,

                 Defendants.

_____/

**DEFENDANT NEBRASKA BOOK COMPANY'S MOTION TO SEVER**

Pursuant to Rules 20(b), 21 and 42(b) of the Federal Rules of Civil Procedure, defendant Nebraska Book Company ("NBC") moves to sever the action initiated by McGraw-Hill Global Education Holdings, LLC ("McGraw-Hill"), Pearson Education, Inc. ("Pearson"), and Cengage Learning, Inc. *f/k/a* Thomson Learning (collectively, "Plaintiffs").

## I.   INTRODUCTION

In a blatant attempt to grossly skew the litigation narrative, Plaintiffs have inappropriately lumped NBC – a company that has been in business for over one hundred years and which participates in the legitimate secondary market for textbooks – with fifteen (allegedly) unscrupulous, fly-by-night, foreign defendants ("Defendants"). This joinder is patently improper.

To abide by Rule 20's permissive joinder parameters, Plaintiffs had to allege that NBC acted in concert with the other fifteen Defendants, that NBC is jointly and severally liable for the acts of the other Defendants, or that the claims against NBC and the other Defendants arise out of the same transaction or occurrence. Plaintiffs have not – and cannot – allege any of these

bases.   Rather, Plaintiffs merely allege that Defendants purportedly infringed the same copyrights and trademarks through alleged sales of the same counterfeit books.  This is alleged coincidence – not alleged mutual contrivance – and cannot justify the joining of NBC with the other Defendants.

To remedy this misjoinder, the Court should sever NBC.   All five factors to be considered on a motion to sever favor severance here because: (1) the claims against NBC do not arise out of the same transaction or occurrence as the claims against the other Defendants; (2) the claims against NBC do not present questions of law or fact common to the claims against the other Defendants; (3) defenses available to NBC are ostensibly not available to other Defendants so there is no judicial economy to be had; (4) NBC would be prejudiced if tried before a jury along with fifteen differently-situated Defendants; and (5) the claims against NBC will involve different witnesses, different evidence, and different legal theories than the claims against the other Defendants.

Alternatively, the Court should dismiss NBC from this litigation or dismiss the Amended Complaint entirely.  By lumping all Defendants together and broadly alleging that the purported acts of every Defendant can be imputed to every other Defendant, the Amended Complaint fails to distinguish NBC's conduct, fails to give NBC adequate notice as to what it did wrong, and, thus, violates Rule 8 of the Federal Rules of Civil Procedure.

## II.   FACTUAL BACKGROUND

A.   __The Parties__.

Founded in 1915, NBC is a venerable business that offers a variety of solutions to assist college bookstores increase their profits.   One segment of NBC's business operates in the secondary market for used college textbooks, a bona fide market protected by the first sale doctrine.  *See Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016) ("American

law … has generally thought that competition, including freedom to resell can work to the advantage of the consumer."). *See also*, Copyright Law Revision, Further Discussions and Comments on Preliminary Draft for Revised U.S. Copyright Law, 88th Cong., 2d Sess., at pt. 4, p. 212 (Comm. Print 1964) ("the very basic of copyright law [is] that, once you've sold a copy legally, you can't restrict its resale").

Plaintiffs are "three of the world's leading educational publishers" of a "comprehensive range of traditional and digital educational content and tools to professionals and students of all ages." (*See* Amended Complaint, Docket No. 60 at ¶ 2). Plaintiffs "serve secondary, post-secondary, and graduate-level students, teachers, and learning institutions providing quality content, assessment tools, and educational services in all available media." (*Id*. at ¶ 29).

**B.** **Plaintiffs Amend the Doe Complaint by Impermissibly Lumping All Defendants**.

On August 17, 2017, Plaintiffs filed suit against Does 1-30 alleging that the unnamed defendants "sell and distribute counterfeit textbooks on Amazon.com, as well as other online marketplaces." (*See* Complaint, Docket No. 1).

On November 22, 2017, Plaintiffs amended their complaint to name sixteen (16) specific Defendants, indiscriminately lumping NBC with foreign defendants allegedly operating illegitimate scams. (*See* Amended Complaint, Docket No. 60). Specifically, Plaintiffs allege:

> Hiding behind the anonymity of Internet pseudonyms, Defendants sell counterfeit copies of Plaintiffs' copyrighted works, bearing unauthorized reproductions of Plaintiffs' trademarks, to individual consumers, wholesale distributors, and third-party sellers. The textbooks Defendants sell are not the legitimate and authorized versions published by Plaintiffs, but rather are counterfeit versions that infringed on Plaintiffs' copyright and trademark rights.

(*Id.* at ¶ 3).

The Amended Complaint further alleges that the Defendants are "inundating the marketplace with unauthorized copies" of their textbooks, which "are often printed overseas."

(*Id.* at ¶ 37).  "The counterfeit books are of varying levels of quality; while some appear to be high quality, many others are not and do not contain the same content as the legitimate textbook."  (*Id.*).

Plaintiffs allege that they have suffered "serious financial and reputational injury when their copyrights and trademarks are infringed."  (*Id.* at ¶ 32).  Plaintiffs assert that this harm is exasperated by sales on www.amazon.com ("Amazon"), a critical channel for distributing their textbooks, because a search for one of their textbooks on Amazon will lead to a listing of all available copies of that textbook by price (lowest-to-highest) and in the ensuing sales competition will likely result in a sale of a cheaper counterfeit.  (*Id.* at ¶ 4).  According to Plaintiffs, the presence of counterfeit text books at below market prices "undercuts" Plaintiffs' sales and the "perceived value" of authorized and legitimate copies of the text books.  (*Id.*).

Critically, with few exceptions, the Amended Complaint makes little attempt to differentiate between the differently-situated defendants, improperly lumping the sixteen defendants together into a global "Defendants."   The Amended Complaint is devoid of any specific allegations that NBC: manufactured the alleged counterfeit textbooks; hid behind anonymous pseudonyms; purposefully created "new online marketplace accounts" with Amazon; "provided Amazon with fictitious name[s]" to conceal its identity or "laundered" illicit proceeds to "off-shore bank accounts." (*Id.* at ¶¶ 3, 39, 51-55, 57). Indeed, the only specific allegation against NBC is that it operates "Excellentext," an online storefront resident to www.amazon.com.  (*Id.* at ¶ 46.  *Compare* ¶¶ 47, 51-55).  Exhibit A of the Amended Complaint further details that Plaintiffs purportedly purchased several textbooks from Excellentext, four of which they have deemed to be counterfeit.

## III.   <u>LEGAL ARGUMENT</u>

A.   <u>**Plaintiffs Have Failed to Satisfy the Mandatory Requirement of Permissive Joinder**</u>.

Rule 20 of the Federal Rules of Civil Procedure governs permissive joinder of multiple defendants into a single action.  Permissive joinder is appropriate where: (1) "any right to relief is asserted against them jointly, severally or, in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences" and (2) "any question of law or fact common to all defendants will arise in the action."  *See* Fed. R. Civ. P. 20(a).

Both requirements are ***mandatory*** and must exist for joinder to be appropriate.

Here, the very first requirement has not been satisfied.   "The phrase 'same transaction, occurrence, or series of transactions or occurrences' requires a degree of factual commonality underlying the claims."  *Adobe Systems Inc. v. Colorado Internet Services, LLC*, 2014 WL 1007627 (N.D. Cal. March 12, 2014), at *2 (internal citations omitted).  More specifically, the plaintiff must demonstrate a systematic pattern of events: that the various defendants acted in concert or engaged in a common scheme.

Plaintiffs do not allege that NBC acted in concert with the other Defendants.[1]  Nor do Plaintiffs allege that NBC is jointly and severally liable for the acts of the other Defendants.  Nor do Plaintiffs allege that the claims arise out of the same transaction or occurrence, a reality underscored by the transactional chart attached as Exhibit A to the Amended Complaint. (*See* Docket No. 60, Ex. A).  The sole relationship between the Defendants and NBC is that they allegedly sold some of the same used textbooks on Amazon. (*Id.* at ¶ 46).  NBC is alleged, for example, to have sold ***four (4) of the thirty-nine (39) textbooks***.  Of these four textbooks, one was allegedly offered for sale solely by NBC, two others were purportedly offered by both NBC

---

[1] The most that the Amended Complaint alleges is that "[s]ome of the Defendants appear to be working collectively because many of the Counterfeit Books exhibit the same counterfeit traits and inferior qualities, and several of the Online Storefronts offer similar inventories."  (Docket No. 60 at ¶ 50).

and other sellers (Chavez Store and Textbook Capital), and the last text was purportedly sold, separately, by three of the Defendants.  The fact that some of the Defendants are also alleged to have sold some of the same textbooks does not satisfy Rule 20(a)'s "same transaction or occurrence requirement."

The case law is clear that separate and distinct acts of copyright and trademark infringement, even when the same works are infringed, is legally insufficient.  Instead, to support joinder, the infringement must be the byproduct of concerted activity.  *See Malibu Media LLC v. Does 1-5*, 285 F.R.D. 273, 277-78 (S.D.N.Y. 2012).  *See also Malibu Media LLC v. John Does 1-23*, 878 F. Supp.2d 628 (E.D. Va. 2012) (defendants' illegal downloading of the same copy of plaintiffs' copyrighted work through the same file sharing protocol did not satisfy same transaction or occurrence test as there is no indication that defendants acted jointly); *Arista Records LLC v. Does 1-4*, 589 F. Supp.2d 151 (D. Conn. Dec. 9, 2008) (the same transaction requirement means that there must be some allegation that the joined defendants "conspired or acted jointly").

For example, in BitTorrent[2] cases, in which uncountable downloaders used "the same method to access a file via the Internet," this Court has held that joinder is improper even though the same movie was being downloaded in the same manner at roughly the same approximate time because the illegal downloads constituted "separate and discrete transactions."  *Digital Sins, LLC v. Does 1-245*, No. 11 Civ. 8170, 2012 WL 1744838, at *2 (S.D.N.Y. May 15, 2012).  Similarly, in *Slep-Tone Entertainment Corp. v. Mainville*, the court held that joinder was improper when there were no allegations that the twenty-three defendants acted in concert:

---

[2] BitTorrent is a "peer-to-peer protocol that allows users to transfer large files on the Internet."  *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 167 (S.D.N.Y. 2012).  With BitTorrent, the infringement is done in tandem, as the process begins when a user decides to share a file (a seed) on the Internet.  BitTorrent then breaks the seed into different pieces that can be downloaded in parts by other users.  Through the process, every downloader also becomes an uploader of the transferred file.

"Although each Defendant allegedly infringed upon the same trademark, each Defendant allegedly did so separately, in time and place, from the other Defendants with no knowledge that the other Defendants were also engaged in any alleged infringement of their own."  2011 WL 47113230, at *5 (W.D.N.C. Oct. 6, 2011).

Further, in *Worldwide Digital Entertainment, LLC v. Woodstone Deli and Sports Grill*, plaintiffs endeavored to support their joinder attempt by alleging an even higher level of interaction among the multiple defendants: that at least some of the Defendants swapped Plaintiffs' copyrighted works and engaged the services of the same co-defendant.  *See* 2014 WL 2442634, at *3.  Even if true, the Court held that the alleged common overlap was "insufficient to link the defendants or to demonstrate that the defendants engaged in the same transactions or occurrence or series of transactions of occurrences."  *Id.*

In *AF Holdings, LLC v. Does 1-1058*, another case involving alleged copyright infringement involving file sharing, the D.C. Circuit explained:

> [Two] users who download the ***same*** files months apart is like two players at the same blackjack table at different times. They may have won the same amount of money, employed the same strategy, and perhaps even played with the same dealer, but they have still engaged in entirely separate transactions.  And simply committing the same type of violation in the same way does not link defendants for the purposes of joinder.

752 F.3d 990, 997-98 (D.C. Cir. 2014).

Other courts have similarly held that an infringement of the same copyright or same trademark "does not link the defendants together for the purposes of joinder."  *LaFace Records, LLC v. Does 1-38*, 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008) ("Although each Defendant allegedly infringed upon the same trademark, each Defendant allegedly did so separately, in time and place, with no knowledge that the Defendants were also engaged in any alleged infringement of their own."); *see also Bridgeport Music, Inc. v. 11C Music*, 202

F.R.D. 229, 232 (M.D. Tenn. 2001) (severing copyright infringement finding that each song represents a "discrete occurrence"); *The Bicycle Peddler, LLC v. Does 1-81*, No. 3:13-cv-79, 2013 WL 3975593 (E.D. Tenn. July 31, 2013) (joinder improper because alleged infringements were a series of discrete transactions that could not be considered a single transaction, given that the alleged downloads took place at different times, dates and over a span of two months).

This is the case even when the defendants acquired the infringing products from the same source.  *See Adobe Systems Inc.*, 2014 WL 1007627, at *3 ("… the fact that all Defendants here allegedly could have obtained the counterfeit or unauthorized copied of Adobe products from the same or similar sources, without concerted action, does not satisfy the same transaction or occurrence test for purposes of Rule 20").  *See also BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 WL 7132629 (N.D. Cal. Aug. 1, 2006) ("The only connection between defendants noted by plaintiffs' papers is the fact that defendants allegedly used the same ISP … to conduct the infringing acts.  However, absent any allegation that these individuals acted in concert, there is no basis for joinder.").

Plaintiffs' failure to satisfy the first of Rule 20(a)'s two mandated requirements render Plaintiffs' attempt to join NBC with the other Defendants legally deficient.  This should be the beginning and end of the analysis.

**B**.    **All Five Federal Factors Favor Severance**.

Even if Rule 20's requirements are deemed to have been met, this Court possesses the discretion to sever NBC and/or other Defendants under Rules 20(b), 21 and 42(b) of the Federal Rules of Civil Procedure.  In making this determination, courts have "broad discretion" to decide whether the joinder "would comport with the principles of fundamental fairness, prejudice either side, or confuse and complicate the issues for the parties involved." *Next Phase Distribution, Inc.*

*v. Does 1-27*, 284 F.R.D. 165, 167-68 (S.D.N.Y. 2012); *Ghaly v. U.S. Dept. of Agriculture*, 228 F. Supp.2d 283, 292 (S.D.N.Y. 2002). *See generally*, *SBO Pictures, Inc. v. Does 1-20*, No. 12 Civ. 3295, 2012 WL 2304253, at *2 (S.D.N.Y. June 5, 2012) ("Joinder should be used when it is convenient and enhances the efficiency of litigation but it need not be used when it is unhelpful.")  The purpose of Rule 20(a) is "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974).

Severing an action calls for consideration of: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *See Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 154-55 (S.D.N.Y. 2003).  Generally, the Court should also "consider whether severance will serve the ends of justice and further the prompt and efficient disposition of litigation." *See Crown Cork & Seal Co., Inc. v. Master Retirement Trust v. Credit Suisse First Boston Corp*., 288 F.R.D. 331, 332 (S.D.N.Y. 2013).

All five factors favor severance.

First, as illustrated above, Plaintiffs do not allege that NBC acted in concert with the other Defendants or that NBC is jointly and severally liable for the acts of the other Defendants. Further, there is no connection between the activity, date, or time of the alleged infringement. The only common thread is that NBC allegedly infringed some of the same textbooks as some other Defendants. *See John Wiley and Sons, Inc.*, 2013 WL 1091315, at *4 ("[the] differing

dates and times of each Defendant's alleged sharing does not allow for an inference that the Defendants were acting in concert" because they did not share the infringed works with one another).

Second, the claims present no common questions of law or fact. "The allegation that defendants have merely committed the same violations in the same way does not satisfy the standard for permissive joinder because there are 'no litigation economies to be gained from trying what are in essence [many] different cases together.'"  *SBO Pictures, Inc.*, 2012 WL 2304253, at *2.   The manner in which NBC acquired one (or more) of the alleged infringing text books (*i.e.*, from a college bookstore) bears no factual relation to the purported manufacturing of a counterfeit textbook.

Third, because NBC possesses unique defenses, including the first sale doctrine as well as a potential copyright misuse defense, neither case management nor judicial economy[3] are served.  *See Pacific Century Int'l, Ltd. v. Does 1-101*, No. Civ. 2533, 2011 WL 5117424, at *3 (N.D. Cal. Oct. 27, 2011) (severing John Does 2-101 when John Does' individual defenses "would require the court to cope with separate discovery disputes and dispositive motions, and to hold separate trials, each based on different evidence"). In fact, to the contrary, the mass grouping of the differently-situated Defendants creates an unnecessarily unmanageable procedure morass. *See John Wiley and Sons*, 2013 WL 1091315, at *2 ("each Defendant would have the right to be present at every other Defendant's deposition – a thoroughly unmanageable and expensive ordeal" that would create a "cumbersome procedural albatross") (quoting *Pac.*

---

[3] "Judicial economy" does not mean Plaintiffs' economy.  The desire to avoid paying multiple statutorily mandated filing fees or to implement other economizing measures does not "justify perverting the joinder rules to first create the management and logistical problems discussed … and then offer to settle with [the] defendants so that they can avoid digging themselves out of the morass plaintiff is creating."  *On the Cheap, LLC*, 280 F.R.D. at 404.  *See generally Digital Sins*, 2012 WL 1744838, at *3 ("[T]he desire to avoid paying statutorily mandated filing fees affords no basis for joinder.").

*Century Int'l Ltd. v. Does 1-101*, No. 11 Civ. 2533, 2011 WL 5117424, at *3 (N.D. Cal. October 27, 2011)).

Fourth, it would be unfairly prejudicial to try NBC – a legitimate, century-old domestic company operating in a bona fide secondary market – in front of a jury along with fifteen (alleged) unscrupulous, fly-by-night, foreign defendants.   Moreover, as has been observed by several courts, mass copyright infringement actions result in a cost asymmetry.   *See MCGIP, LLC v. Does 1-149*, No. C 11-02331, 2011 U.S. Dist. LEXIS 108109, at *11 n.5 (N.D. Cal. Sept. 16, 2011) ([T]he mass copyright infringement cases have emerged as a strong tool for leveraging settlements – a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access *en masse* to the identities of alleged infringers"); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-08333-ODW, 2013 U.S. Dist. LEXIS 64564, at *7 (C.D. Cal. May 6, 2013) ("These lawsuits were filed using boilerplate complaints based on a modicum of evidence calculated to maximize settlement profits by minimizing costs and efforts.").   Plaintiffs benefit from economies of scale but foist prejudicial discovery and related obligations upon the defendants, such as having to attend unrelated depositions and hearings and preparing "joint" scheduling reports.   NBC should be able to avoid this prejudice.

Fifth, the claim will involve different witnesses, different evidence, and different legal theories.   In that NBC has not manufactured ***any*** textbooks (counterfeit or otherwise); does not use Amazon's fulfillment service;[4] and has not "laundered" illicit proceeds to "off-shore bank accounts," any evidence involving these events is wholly unrelated to NBC.   Conversely, NBC's relationships with college book stores has no bearing on the other Defendants.   *See On the Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500, 503 (N.D. Cal. 2011) ("Because the large number

---

[4] Exhibit A to the Amended Complaint notes that only a fraction of the Defendants use Amazon's fulfillment service. Thus, the Amended Complaint alleges Defendants interacted with purchasers differently.

of defendants with individual issues will create 'scores of mini-trials involving different evidence and testimony' and complicate the issues for all those involved, it is more efficient to proceed with separate cases where there will be separate proceedings, including separate motion hearings and ADR efforts.") (internal citations omitted).

Because severance is specifically supported by all five factors and generally serves the ends of justice and furthers the prompt and efficient disposition of litigation, the Court should sever NBC.

**C.     The Court Should Dismiss NBC Without Prejudice**.

Given that permissive joinder is improper, the Court must determine the proper remedy. In this case, this Court should dismiss the claims against NBC.  *See generally*, *John Wiley and Sons, Inc. v. John Does 1-22*, 2013 WL 1091315, at *4 (S.D.N.Y.  March 15, 2013) (dismissing the action against the severed defendants); *Patrick Collins v. John Does 1 through 9*, 2012 WL 7062535, at *4 (S.D. Cal. Nov. 8, 2012) ("The Court dismisses the claims against severed Doe Defendants without prejudice to Plaintiff refiling through separate complaints."); *Worldwide Digital Entertainment, LLC*, 2014 WL 2442634, at *5 ("Should plaintiffs wish to pursue their claims against these defendants, they will be required to file a separate action as to each defendant and pay a separate filing fee.").

Alternatively, "the court may at any time, on just terms, add or drop a party.   The Court may also sever any claim against a party."  Fed. R. Civ. P. 21.  This Court should drop NBC as a party or sever Plaintiffs' claims against NBC.

**D**.     **The Amended Complaint Should Be Dismissed under Fed. R. Civ. P. 8**.

Even if the Amended Complaint were not subject to dismissal pursuant to Rules 20, 21 and 42, Plaintiffs' general attribution of the wrongful acts to the sixteen Defendants violates Rule

8 and mandates dismissal.

The Federal Rules of Civil Procedure provide that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The complaint must "give fair notice of the claim asserted" to allow defendant "to answer and prepare for trial."  *Plunket v. Doyle*, No. 99 Civ. 11006, 2001 WL 175252, at *4 (S.D.N.Y. Feb. 22, 2001) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

Plaintiffs' attribution of the wrongful acts as being collectively committed by the sixteen Defendants is legally insufficient.  As stated by this Court in *Appalachian Enters, Inc. v. ePayment Solutions, Ltd.*, "***A plaintiff fails to satisfy Rule 8, where the complaint lumps all of the defendants together and fails to distinguish their conduct***, because such allegations fail to give adequate notice to the [ ] defendants as to what they did wrong."  2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) (emphasis added); *Lippe v. Bairnco Corp.*, 96 Civ. 7600, 1998 U.S. Dist. LEXIS 16060, at *39 (S.D.N.Y. Oct. 14, 1998) ("plaintiffs cannot simply 'lump' all of the defendants together and allege that the purported acts of every defendant can be imputed to every other defendant").

In copyright infringement cases, courts in the Second Circuit interpret "fair notice" as requiring a plaintiff to allege: "(1) which specific original works are the subject of the copyright claim; (2) that the plaintiff owns the copyright in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts during what time the defendant infringed the copyright."  *Id.* (citing *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992)); *Carell v. The Shubert Org., Inc.*, 104 F. Supp. 2d 236, 250 (S.D.N.Y. 2000).  In view of "the principle enshrined in Rule 8 – namely, to provide defendants fair notice of the claims against them – a plaintiff suing for copyright infringement may not rest on bare-bones allegations that

infringement occurred.  Rather, [it] must identify the 'specific original work that is the subject of the claim' as well as 'by what acts' the defendant infringed the copyright."  *See Sharp v. Patterson*, No. 03 Civ. 8772, 2004 WL 2480426, at *12 (S.D.N.Y. Nov. 3, 2004) (citing *Brought to Life Music, Inc. v. MCA Records, Inc.*, No. 02 Civ. 1164, 2003 WL 296561, at *1 (S.D.N.Y. Feb. 11, 2003)).

Count Two of the Amended Complaint violates this pleading requirement by broadly alleging:

> Beginning on an unknown date but at least since November 2016 and continuing to the present, Defendants, with knowledge of Plaintiffs' copyrights in Plaintiffs' Books, indirectly infringed Plaintiffs' copyrights.  Specifically, Defendants knowingly engaged in, supervised, and/or controlled the distribution of the Counterfeit Books, and had a direct financial interest in, and stood to gain a direct financial benefit from their deliberately infringing activity.  By engaging in the illegal conduct above, in addition to directly organizing and effectuating such infringing activities, Defendants personally induced, caused and materially contributed to infringing conduct by others, including resellers to whom Defendants sold the Counterfeit Books for further distribution.

(*See* Amended Complaint, Docket No. 60 at ¶ 74).  This kind of broad allegation was found deficient by the *Palmer Kane* court: "absent any factual support, [the complaint] merely states a legal conclusion insufficient to withstand a motion to dismiss."  *Palmer Kane*, 2013 WL 709276, at *3 (quoting *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 228 (S.D.N.Y. 2000)).  "While the complaint need not specify which copyright is infringed by which act, the complaint needs to contain some factual allegations to narrow the infringing acts beyond broad conclusory statements of infringement."  *Id.* (quotations omitted); *see also Plunket*, 2001 WL 175252, at *5 (finding that the plaintiff's claim "lack[ed] sufficient detail to the infringing acts alleged"); *Lindsay v. R.M.S. Titanic*, 52 U.S.P.Q.2d 1609, 162 (S.D.N.Y. 1999) (dismissing copyright claim that defendant "did knowingly and willfully infringe upon Plaintiff's copyright … by unlawfully purchasing and/or otherwise obtaining copies of the Subject Work").

To the extent that Plaintiffs possess a reasonable, good faith belief that NBC knowingly "engaged in, supervised and/or control[ed] the distribution of the Counterfeit Books" – as opposed to having unwittingly sold copies of a few textbooks which proved to be counterfeit – then Plaintiffs need to state the factual basis for their claim to provide NBC with fair notice of how and why it is liable for secondary infringement.  It is incumbent neither on NBC nor this Court to wade through Plaintiffs' allegations and decipher which allegations apply to NBC and which allegations apply to the other Defendants.

Similarly, Count Four of the Amended Complaint broadly alleges a claim for Trademark Counterfeiting: "Defendants are infringing the federally registered Plaintiffs' Marks through their use in commerce of a counterfeit, copy, or colorable imitation of Plaintiffs' Marks, in connection with the sale, offering for sale, marketing, distributing, or advertising of textbooks, with such use being likely to cause confusion, to cause mistake, or to deceive the public." (*See* Amended Complaint*, Docket No. 60* at ¶ 86).  Plaintiffs again fail to satisfy Rule 8 by not only lumping all Defendants together but also by lumping all eight of the Plaintiffs' trademarks from Exhibit B together.  By failing to distinguish with any specificity which Defendant infringed which trademark and when and how such infringement happened, Plaintiffs fail to provide adequate notice to NBC as to what it did wrong.

## IV.   CONCLUSION

For the foregoing reasons, NBC respectfully request that it be severed, dropped, or dismissed from this action, and that the Amended Complaint be dismissed.

Respectfully submitted,

**STROOCK & STROOCK & LAVAN LLP**
*Attorneys for defendant Nebraska Book Company*
James G. Sammataro, Esq.
New York Bar No.: 4937926
jsammataro@stroock.com
Southeast Financial Center
200 South Biscayne Blvd., Suite 3100
Miami, Florida  33131
Telephone: (305) 358-9900
Facsimile: (305) 416-2888

By:  *s/* James G. Sammataro

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 25, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a notice of the foregoing document is being served this day on all counsel of record identified in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF this 25th day of January, 2018 to:

| | |
|---|---|
| Kerry Malloy Mustico<br>Oppenheim + Zebrak, LLP<br>5225 Wisconsin Ave, NW, Ste 503<br>Washington, DC 20015<br>(202)-621-9027<br>Fax: (866)-766-1678<br>Email: kerry@oandzlaw.com<br><br>Matthew Jan Oppenheim<br>Oppenheim + Zebrak, LLP<br>5225 Wisconsin Ave, NW, Ste 503<br>Washington, DC 20015<br>(202) 480-2999<br>Fax: (866)-766-1678<br>Email: matt@oandzlaw.com<br><br>Eric A. Prager<br>K&L Gates LLP (NYC)<br>599 Lexington Avenue<br>New York, NY 10022-6030<br>(212)-536-3900<br>Fax: (212)-536-3901<br>Email: eric.prager@klgates.com | John Dominick D'Ercole<br>Robinson Brog Leinwand Greene Genovese<br>& Gluck PC<br>875 Third Avenue<br>9th Floor<br>New York, NY 10022-6225<br>212 603-6368<br>Fax: 212 956-2164<br>Email: jdd@robinsonbrog.com<br><br>Louis M. Diluzio<br>The Chartwell Law Offices, LLP<br>One Battery Park Plaza 35TH FLOOR<br>New York, NY 10004<br>(201)-438-0200<br>Fax: (201)-623-5888<br>Email: ldiluzio@choilawgroup.com |

*s/* James Sammataro