# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MCGRAW-HILL GLOBAL EDUCATION
HOLDINGS, LLC, PEARSON EDUCATION,
INC., and CENGAGE LEARNING, INC.,

        Plaintiffs,

  v.

JORGE L. TURCIOS, PEDRO A. TURCIOS,
HEW SAN YOU, BEENISH BUTT, MEHAK
NAEEM, LIM SEI RIANG, DOE 9 (A/K/A
"PAUL LONDON"), JAMES ADEWOLA,
SHAHZAD AGHDAM, ZACKARI BOUKARI,
LINDA CLARK, MATTHEW FIFE, RYAN J.
HARRIS, DC ONLINE INC., NEBRASKA
BOOK COMPANY, INC., and ZJUS EXPRESS
INC.,

        Defendants.

Case No. 1:17-cv-06222-GHW

## PLAINTIFFS' RESPONSE TO DEFENDANT
## NEBRASKA BOOK COMPANY'S MOTION TO SEVER

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

   I. SEVERANCE OF THE CLAIMS AGAINST NBC IS WARRANTED SO THAT
   PLAINTIFFS MAY ASSERT THEIR ADDITIONAL INFRINGEMENT CLAIMS AGAINST
   NBC IN A SINGLE ACTION ................................................................................................ 3

   II.  RULE 8 IS EASILY SATISFIED HERE ............................................................................. 6

   III. JOINDER OF PLAINTIFFS' CLAIMS IN SUIT WAS AND REMAINS APPROPRIATE ... 9

      A.  The Counterfeit Textbooks Were Distributed in the Same Series of Transactions
      or Occurrences  ............................................................................................ 11

      B.  There Are Common Questions of Law and Fact Among the Claims Against
      Defendants  .................................................................................................. 12

      C.  Joinder of Defendants Here Has Served Efficiency and Economy for the Court
      and All Parties ............................................................................................. 14

CONCLUSION ......................................................................................................................... 17

# TABLE OF AUTHORITIES

<u>Cases</u>

*Aghaeepour v. N. Leasing Sys., Inc.*, 2015 WL 7758894 (S.D.N.Y. 2015) ...................................7

*Arista Records, LLC v. Does 1-27*, 584 F. Supp. 2d 240 (D. Me. 2008) ....................................15

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...........................................................................................7

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ....................................................................... 6-7

*Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408 (S.D.N.Y. 1989) .................................................3

*Call of the Wild Movie, LLC v. Does 1-1,062*, F. Supp. 2d 332 (D.D.C. 2011) ...................... 4, 9-10, 13,16

*Digital Sin, Inc. v. Doe*, No. 12-cv-3873-JMF, 2012 WL 2036035,
2012 U.S. Dist. LEXIS 78832 (S.D.N.Y. June 6, 2012) ...............................................................9

*Digital Sin, Inc. v. Doe*, No. 11 Civ. 8170 (CM), 2012 WL 1744838,
2012 U.S. Dist. LEXIS 69286 ........................................................................................................9

*Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. 2012) ........................................3, 4, 9

*Disparte v. Corp. Exec. Bd.,* 223 F.R.D. 7 (D.D.C. 2004) .............................................................3

*Elektra Entm't Group v. Does 1-9,* No. 04-cv-2289-RWS,
2004 U.S. Dist. LEXIS 23560 (S.D.N.Y. Sept. 7, 2004) .....................................................10, 16

*First Time Videos, LLC v. Does 1-76,* 276 F.R.D. 254 (N.D. Ill. 2011) .................................9, 13

*In re WorldCom, Inc. Sec. Litig.,* No. 02-cv-3288-DLC, 2003 WL 1563412,
2003 U.S. Dist. LEXIS 4462 (S.D.N.Y. Mar. 24, 2003) ...............................................................3

*K-Beech, Inc. v. Doe,* No. 2:11-cv-358-FtM-36SPC,
2011 U.S. Dist. LEXIS 132834 (M.D. Fla. 2011) .......................................................................16

*London-Sire Records, Inc. v. Doe 1,* 542 F. Supp. 2d 153 (D. Mass. 2008) ...............................16

*McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, No. 16-cv-8530 (WHP),
2017 WL 6343627, 2017 U.S. Dist. LEXIS 204263 (S.D.N.Y. Dec. 12, 2017) .........................7

*M.K. v. Tenet,* 216 F.R.D. 133 (D.D.C. 2002) ..............................................................................4

*New Sensations, Inc. v. Doe,* No. 12-cv-3534-PAE, 2012 WL 3100816,
2012 U.S. Dist. LEXIS 107061 (S.D.N.Y. July 30, 2012) ............................................................9

*Puricelli v. CNA Ins. Co.,* 185 F.R.D. 139 (N.D.N.Y. 1999) ........................................................3

*Strunk v. U.S. House of Representatives*, 68 F. App'x 233 (2d Cir. 2003) ....................................7

**TABLE OF AUTHORITIES**
**(Continued)**

Cases

*United Mineworkers of America v. Gibbs*, 383 U.S. 715, S. Ct. 1130 (1966)................................................4

*Voltage Pictures, LLC v. Doe,* 818 F. Supp. 2d 33 (D.D.C. 2011)...........................................3, 6, 8, 13, 15


Rules

Fed. R. Civ. P. 8 ...............................................................................................................6, 7, 8

Fed. R. Civ. P. 20 .............................................................................................................*passim*

Fed. R. Civ. P. 21 ..............................................................................................................3, 8

Fed. R. Civ. P. 42 ................................................................................................................6

Other Authorities

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1652 (3d ed. 2011)  ...........3

Plaintiffs McGraw-Hill Global Education Holdings, LLC, Pearson Education, Inc., and Cengage Learning, Inc. (collectively, "Plaintiffs") respectfully submit this response to Defendant Nebraska Book Company's Motion to Sever (the "Motion"), as well as to the questions raised by the Court in the January 12, 2018 pre-motion conference.  In support thereof, Plaintiffs state as follows:

## INTRODUCTION

Plaintiffs agree with Nebraska Book Company ("NBC") that their claims against it should be severed into a separate action.  However, Plaintiffs reach this conclusion for reasons altogether different than those asserted in NBC's Motion.  Plaintiffs have additional infringement claims that are unique to NBC relative to other Defendants in suit.  All of Plaintiffs' infringement claims against NBC should be joined in a single action, though not in the above-captioned lawsuit involving other Defendants.

Plaintiffs have identified significantly more counterfeit sales attributable to NBC.  In particular, Plaintiffs have evidence that NBC sold counterfeit copies of 18 additional textbook titles.  NBC's counterfeit sales occurred through a variety of means, separate and apart from its infringing sales of counterfeits as set forth in this action; i.e., four different textbook titles via NBC's Excellentext Storefront on Amazon.com.  NBC sold the counterfeits of 18 additional textbook titles to several large, wholesale distributors, as well as to consumers or other resellers on multiple online marketplaces.  Thus, Plaintiffs' claims alleging new instances of infringement against NBC will involve facts and evidence different from that involved in Defendants' infringing sales already at issue in this case.

Dismissal of the Amended Complaint or Plaintiffs' specific claims against NBC is not appropriate.  Plaintiffs brought this suit against "Doe" defendants who sold counterfeit copies of

Plaintiffs' textbooks anonymously through online storefronts on Amazon.com during the same, narrow window of time—the critical season just before the start of the fall semester at universities across the country.  The Amended Complaint, which identifies named Defendants, including NBC, as well as the initial Complaint before it, provide details of the specific instances of infringement that more than meet the notice pleading requirement in Federal Rule of Civil Procedure 8.  Moreover, although Plaintiffs believe that joinder is appropriate, the proper remedy for misjoinder is severance, not dismissal.

During the January 12 pre-motion conference, the Court raised concerns relating to the joinder issue and invited Plaintiffs to address those concerns in their response to NBC's motion to sever.  Plaintiffs respectfully do so in this Response.  While Plaintiffs agree that severance of NBC's claims is appropriate now, joinder of the claims against the other Defendants remains warranted and appropriate.  All Defendants here operate one or more online storefronts on Amazon.com (collectively, "Storefronts," and each a "Storefront"), through which each sold three or more counterfeit textbooks that infringe Plaintiffs' copyrights and trademarks.  None of Defendants' Storefronts, including NBC's Excellentext, identify the owner-operators of the Storefronts.  Rather, Defendants' infringing sales, including those by NBC via its Excellentext Storefront, were conducted anonymously on the same platform, during the same time period, through Storefronts advertising overlapping textbook listings.  In addition, some of the counterfeit textbooks were sold by different Storefronts in a single transaction, or were shipped by the same distributor (Amazon) in the same package.  Thus, the infringing sales at issue here are "logically related," permitting joinder of the claims asserting Defendants are liable for such sales.

<u>ARGUMENT</u>

I. **SEVERANCE OF THE CLAIMS AGAINST NBC IS WARRANTED SO THAT PLAINTIFFS MAY ASSERT THEIR ADDITIONAL INFRINGEMENT CLAIMS AGAINST NBC IN A SINGLE ACTION.**

"Parties may be joined when (1) the defendants are jointly and severally liable under the claims asserted by the plaintiff, or (2) the claims for relief by the plaintiff arises out of the same transaction, occurrence, or series of transactions or occurrences.  Additionally, there must be common questions of law or fact." *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 243 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 20(a)(2)).  "Rule 20 permits all logically related claims by or against different parties to be tried in a single proceeding."  *See In re WorldCom, Inc. Sec. Litig.,* No. 02-cv-3288-DLC, 2003 WL 1563412, 2003 U.S. Dist. LEXIS 4462, at *9 (S.D.N.Y. March 24, 2003) (internal quotations and citations omitted); *Voltage Pictures, LLC . v. Doe*, 818 F. Supp. 2d 28, 39 (D.D.C. 2011) (stating the need for claims to arise out of the same transaction or occurrence or series of transactions or occurrences "essentially requires claims asserted against joined parties to be 'logically related'" (quoting *Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004)).

"Rule 21 . . . provides that 'any claim against a party may be severed and proceeded with separately.'  Rule 21, which addresses 'misjoinder and non-joinder of parties,' complements Rule 20, which sets forth the conditions for permissive joinder."  *See In re WorldCom,* 2003 U.S. Dist. LEXIS 4462, at *8-9 (citing Fed. R. Civ. P. 21).  "'The purpose of [Rule 20] is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'"  *Digital Sin*, 279 F.R.D. at 243 (quoting 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1652 (3d ed. 2011)); *Puricelli v. CNA Ins. Co*., 185 F.R.D. 139, 142 (N.D.N.Y. 1999) (same; citing *Blesedell v. Mobil Oil Co*., 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989)).

Thus, under the Federal Rules of Civil Procedure, "the impulse is toward entertaining the

3

broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mineworkers of America v. Gibbs*, 383 U.S. 715, 724, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966); *Digital Sin*, 279 F.R.D. at 243.  The requirements of permissive joinder are "liberally construed in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive determination of the action." *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 344-45 (D.D.C. 2011) (internal quotations and citation omitted); *M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002) (explaining that permissive joinder is appropriate to avoid "extra expense to the parties, and loss of time to the court as well as the litigants before it").

After receiving Amazon's expedited discovery responses disclosing the registration information behind Defendants' Storefronts, Plaintiffs were able to connect a significant number of additional instances of infringements to the operators of the Excellentext Storefront.  Decl. of Kerry Mustico, submitted herewith, ¶¶ 7-12.  At the time of their initial filing, Plaintiffs knew that Excellentext distributed counterfeit textbooks, that Plaintiffs' orders from Excellentext were fulfilled by Amazon, and that the counterfeit textbooks shipped from Amazon's warehouse in Lexington, Kentucky.[1]   Mustico Decl. ¶ 6.  Plaintiffs had no other information regarding Excellentext.  NBC, notwithstanding that it purports to be a "century-old," "venerable business," chose to operate the Excellenttext storefront on an entirely anonymous basis, rather than providing any contact information or publicly associating itself with the storefront.  There simply was no way for Plaintiffs to discover that NBC operated Excellentext short of filing this lawsuit.

---

[1] Plaintiffs and NBC have incorrectly stated that Excellentext did not use the FBA service.  *See* Am. Compl. ¶ 46(e); Mot. at 11.  All four counterfeits Plaintiffs purchased from Excellentext were shipped by Amazon from its fulfillment center located at 172 Trade Street, Lexington, Kentucky, *see* Mustico Decl. ¶ 6, a clear indication that Excellentext employs the FBA service.

However, through Plaintiffs' other, parallel enforcement efforts, Plaintiffs uncovered numerous counterfeits distributed through the following online storefronts:  "Nettextstore" on Barnes & Noble.com, eBay.com, and Alibris.com; and "Net Textstore LLC" on Abebooks.com. Mustico Decl. ¶ 7.  Like Excellentext, these online storefronts are all operated by NBC.  *Id*. Plaintiffs also have received multiple counterfeit textbooks from large distributors that themselves had purchased counterfeits from NBC.  *Id.* ¶ 9.  In addition, Plaintiffs received counterfeit textbooks, which were purchased from apparently unrelated storefronts on Abebooks.com and Amazon.com, but that were shipped from NBC's address in Lincoln, Nebraska—a telltale sign that NBC is likely drop-shipping counterfeit textbooks for other online sellers.  *Id.* ¶ 8.  Finally, Plaintiffs discovered in the last few weeks that NBC is the source of a counterfeit textbook Plaintiffs purchased from yet another storefront on Amazon, named Snowline Books & Media ("Snowline").  *Id.* ¶ 11.  Snowline provided evidence to Plaintiffs that it had purchased the counterfeit, along with 69 additional copies of the textbook, from NBC's storefront on Abebooks, Net Textstore LLC.  *Id*.  To date, Plaintiffs have collected evidence that NBC has distributed counterfeit copies of at least 22 of Plaintiffs' textbook titles, including the four counterfeits initially identified in Plaintiffs' Complaint.  *Id.* ¶ 12.

Plaintiffs now seek to assert claims against NBC concerning the additional infringements described above.  *Id.* ¶ 13.  While there will remain common questions of law among the current claims in suit and the additional claims of infringement against NBC, there will be significant factual differences among the allegations.  In particular, the new claims of infringement against NBC involve NBC's distribution of counterfeit textbooks through a variety of channels, separate and apart from the Excellentext Storefront on Amazon.  These include NBC's sales to wholesale distributors and consumers and resellers via NBC's storefronts on multiple online marketplaces

other than Amazon.  As such, Plaintiffs' new infringement claims against NBC will involve factual evidence concerning distribution of counterfeits that is entirely different from the factual evidence necessary to prove the distribution via the Amazon Storefronts.

NBC's distribution of four counterfeit textbook titles via Excellentext now represents a small portion of NBC's known infringing activity, which currently involves 22 different textbook titles, most of which do not overlap with the textbook titles and associated copyrights infringed by the other Defendants in this case.  *Id.* ¶ 12.  Given these new facts, there is a reasonable chance that Plaintiffs' new claims against NBC, most of which are unrelated to the claims against the other Defendants, will cause unnecessary delay or otherwise unfairly prejudice such Defendants.  *See Voltage Pictures*, 818 F. Supp. 2d at 38 n.15 ("In addition to the two requirements of Rule 20(a)(2), courts . . . also consider whether joinder would prejudice any party or result in needless delay."); *cf.* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, [or] claims . . . .").  Severance of Plaintiffs' claims against NBC is appropriate for these reasons, not those NBC has asserted in its Motion.

## II.  RULE 8 IS EASILY SATISFIED HERE.

There is no merit to NBC's argument that Plaintiffs' pleading fails to satisfy the standard set forth under Federal Rule of Civil Procdure 8.  NBC proceeded with such argument only by ignoring the clear and unambiguous allegations identifying the specific copyrights and trademarks it infringed, the particular counterfeit textbook titles it sold, the very channel through which it made those infringing distributions, and the time period involved.

Under Rule 8, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation

marks and citations omitted).  The purpose of Rule 8(a) "is to provide fair notice of the claims and to enable the adverse party to answer the complaint and prepare for trial." *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003).  A complaint is insufficient if it merely contains "unadorned, the defendant-unlawfully-harmed-me accusation[s]" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citations omitted).  "Dismissal is generally reserved for a complaint that is 'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, Case No. 16-cv-8530-WHP, 2017 WL 6343627, 2017 U.S. Dist. LEXIS 204263, at *18 (S.D.N.Y. Dec. 12, 2017) (quoting *Aghaeepour v. N. Leasing Sys., Inc*., 2015 WL 7758894, at *4 (S.D.N.Y. 2015)).

NBC argues that the Amended Complaint should be dismissed because Plaintiffs have "indiscriminately lump[ed] NBC" with other defendants.  However, the Amended Complaint specifically alleges the means by which NBC distributed counterfeits in violation of Plaintiffs' rights, i.e., through specific sales made by the Excellentext Storefront on Amazon.  *See* Am. Compl. ¶ 46(e).  Moreover, in Exhibit A, Plaintiffs have specifically identified the textbooks (by title, edition, ISBN, and copyright registration number) that NBC, through Excellentext, is alleged to have infringed.[2]  *See McGraw-Hill Global Educ.*, 2017 U.S. Dist. LEXIS 204263, at *18 (denying motion to dismiss under Rule 8 because plaintiffs identified allegedly infringing textbooks discovered to date and noting that "[r]equiring Plaintiffs to name all of the infringed works that may be part of the alleged counterfeiting scheme at the pleadings stage would be a fool's errand—that is the point of discovery").

---

[2] In the Seymour Declaration, submitted in support of Plaintiffs' *ex parte* application for a temporary restraining order and order to show cause, Plaintiffs also provided the specific order numbers associated with each purchase of the counterfeit textbooks.  *See* Seymour Decl., Ex. 4.

The Amended Complaint also provides background factual detail regarding how Amazon operates and how Defendants, including NBC, advertise, offer for sale, and distribute counterfeit textbooks through their Storefronts.   But, NBC cherry-picks allegations, particularly from the background and introductory sections of the Amended Complaint, to complain about being "lumped" with other Defendants.   *See, e.g.,* Mot. at 4.   NBC clearly takes issue with being associated with other Amazon sellers, whom NBC believes do not have NBC's purported renown. However, NBC infringed just like these other Defendants selling counterfeits on Amazon.   In fact, NBC's infringing activity may be far more extensive than some other Defendants.   Regardless, Plaintiffs' allegations against Defendants are accurate and appropriate, not indiscriminate. Plaintiffs alleged common facts against all Defendants only where such allegations applied to all Defendants, rather than repeating the same allegations 21 times.   In the instances where Plaintiffs alleged particular facts that applied to some but not all Defendants, Plaintiffs specifically identified which Defendants such allegations applied to.   *See* Am. Compl. ¶¶ 46-47, 51-55.   In short, the allegations in the Amended Complaint are more than sufficient to satisfy Rule 8's requirement that NBC be given notice of Plaintiffs' claims against it.

NBC's arguments under Rule 8 clearly are meant to compel the ultimate result they seek—dismissal of the claims against NBC so that Plaintiffs are forced to start over again and file a new action.   But, as NBC readily acknowledged during the pre-motion conference with the Court, the proper remedy for misjoinder is severance, not dismissal.   Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action."); *see also, e.g., Voltage Pictures,* 818 F. Supp. 2d at 38 ("[T]he Court notes that the remedy for improper joinder under [Rule] 21 is not dismissal of the action.").

III.    **JOINDER OF PLAINTIFFS' CLAIMS IN SUIT WAS AND REMAINS APPROPRIATE.**

During the January 12 pre-motion conference, the Court raised several questions regarding application of joinder principles to this litigation.  Below, Plaintiffs address the factors permitting joinder here.  Plaintiffs submit that this discussion responds to the Court's questions and squarely refutes NBC's arguments that it was improperly joined in this suit.

In its Motion, NBC cites several cases that have found joinder of Doe defendants improper.  But NBC failed to inform the Court of the differing conclusions reached by district courts across the country, including in this District, as to when joinder is permitted.  For example, NBC cites *Digital Sins, Inc. v. Doe*, No. 11-cv-8170-CM, 2012 WL 1744838, 2012 U.S. Dist. LEXIS 69286, at *6-7 (S.D.N.Y. May 15, 2012) (McMahon, J.), which severed the plaintiffs' claims against Doe defendants.  *See* Mot. at 6.  Yet NBC omits that Judge Alison Nathan recognized in another *Digital Sin* case that a number of courts "have drawn the opposite conclusion, finding joinder to be proper under similar circumstances." *Digital Sin*, 279 F.R.D. at 243 & n.5 (collecting cases where joinder found appropriate); *see also, e.g., Digital Sin, Inc. v. Doe*, No. 12-cv-3873-JMF, 2012 WL 2036035, 2012 U.S. Dist. LEXIS 78832, at *6-7 (S.D.N.Y. June 6, 2012) (Furman, J.); *New Sensations, Inc. v. Doe,* No. 12-cv-3534-PAE, 2012 WL 3100816, 2012 U.S. Dist. LEXIS 107061, at *5-6 (S.D.N.Y. July 30, 2012) (Englemayer, J.); *cf. First Time Videos, LLC v. Does 1-76*, 276 F.R.D. 254, 258 (N.D. Ill. 2011) (collecting cases and noting, "[t]he overwhelming majority of courts have denied as premature motions to sever prior to discovery").

Particularly relevant here, courts have recognized that "requiring aggrieved parties to file hundreds or even thousands of separate copyright infringement actions would neither be cost efficient for the plaintiffs nor promote convenience or judicial economy for the courts."  *Digital Sin*, 279 F.R.D. at 244 n.6 (citing *Call of the Wild*, 770 F. Supp. 2d at 344-45); *Call of the Wild*,

770 F. Supp. 2d at 345 ("Given the administrative burden of simply obtaining sufficient identifying information to properly name and serve alleged infringers, it is highly unlikely that the plaintiffs could protect their copyrights in a cost-effective manner."); *cf. Elektra Entm't Group v. Does 1-9*, No. 04-cv-2289-RWS, 2004 U.S. Dist. LEXIS 23560, at *19-20 (S.D.N.Y. Sept. 7, 2004) (severing claims against one Doe defendant upon its motion, but declining to sever claims against non-moving Doe defendants because, *inter alia*, number of Doe defendants was not unduly large and non-moving defendants may wish to litigate the case collectively as a cost-saving measure).

Moreover, there is ample recent history in this District of copyright and trademark cases proceeding against multiple defendants.  Such cases are often brought against Doe defendants, but not always.  A few examples of recent cases include:  *WowWee Group Ltd. v. Aaiwa Elec. Tech. Co.*, Case No. 17-cv-7969-RWS; *McGraw-Hill Global Educ. Holdings, LLC v. Chin Siow Peng*, Case No. 17-cv-6224-RJS; *Elsevier, Inc. v. Siew Yee Chew*, Case No. 17-cv-6225-JGK; *True Religion Apparel, Inc. v. Xiaokang Lei*, Case No. 11-cv-8242-HB; and *The North Face Apparel Corp. v. Fujian Sharing Import & Export Ltd.*, Case No. 10-cv-1630-AKH.

The interconnected relationship involved in the Amazon marketplace and the Defendants operating the Storefronts anonymously, with the infringing textbooks often being stored and shipped from a single location, creates a logical relationship among Plaintiffs' claims against Defendants.  Joining Plaintiffs' claims in this action was the most efficient, economical, and indeed the only practical means of proceeding in this ongoing battle against counterfeits unlawfully and injuriously infecting the marketplace.  Thus, joinder of Plaintiffs' claims was permissible and appropriate, and will remain so as to the remaining Defendants even if the Court severs the claims against NBC into a separate action.

A.     **The Counterfeit Textbooks Were Distributed in the Same Series of Transactions or Occurrences.**

NBC argues incorrectly that Plaintiffs' claims do not satisfy the factors for permissive joinder.  Plaintiffs' purchases of counterfeit textbooks from Defendants' Storefronts, as alleged in the Amended Complaint, were conducted in a series of transactions on Amazon, and sometimes in a single transaction involving multiple Storefronts.

Plaintiffs' pre-filing investigation involved, among other things, purchasing textbooks in a series of transactions from Defendants' Storefronts on Amazon.  Am. Compl. ¶ 49.  None of Defendants' Storefronts, including NBC's Excellentext, identify the owner-operator of the other Storefronts at issue. *See* Am. Compl. ¶ 3.  To be clear, neither the Amazon website, nor the shipments Plaintiffs received, identified who operated Excellentext or the other Storefronts. Seymour Decl. ¶ 9.  Through their Storefronts, all Defendants sold three or more counterfeit textbooks that infringe Plaintiffs' copyrights and trademarks.  Am. Compl. ¶ 63.  Six of Defendants' Storefronts, including Excellentext, utilize Amazon's Fulfillment By Amazon ("FBA") service.[3] *Id.* ¶ 46.  This means that Amazon stores, packs, ships, and handles customer service and returns for Defendants who use the FBA service.  *Id.* ¶ 42.

All Defendants sold counterfeit textbooks via Amazon between mid-April 2017 and mid-July 2017.[4]  *See* Seymour Decl., Ex. 4.  In a number instances, Plaintiffs purchased multiple textbooks from multiple Storefronts in a single order.   For example, Plaintiffs purchased counterfeit textbooks from Storefronts BabylonBooks, CyclonicQuake, and sellermojo86 in a

---

[3] Before filing the Amended Complaint, Plaintiffs settled their claims against three Defendants who operate Storefronts that also utilize the FBA service (Apple River Books, BabylonBooks, and briarwoodbooks).

[4] Storefronts Newton Dunbar, Excellentext, and Fullerton Bookstore sold additional counterfeit textbooks to Plaintiffs on four prior dates, February 21-22 and March 14 and 24, 2018.  *See* Seymour Decl., Ex. 4 (ECF No. 13-4).

single order on Amazon, *see id.* (Order ID 112-7426612-8818615), and from Storefronts Apple River Books, CyclonicQuake, and Text_Crew in a single order on Amazon, *see id.* (Order ID 112-1531183-5067451).

Additionally, many of the counterfeit textbooks received from the Storefronts were shipped by Amazon from a single location, its fulfillment center in Lexington, Kentucky.  In several instances, Plaintiffs received, in a single package, counterfeit textbooks purchased from more than one of Defendants' Storefronts, even where Plaintiffs purchased the books in separate orders on Amazon.  Mustico Decl. ¶ 4.  For example, Plaintiffs received counterfeit textbooks that were purchased (in a single order) from Fast Fulfilments and Wee Woozy Books in the same package. *See id.*  Likewise, Plaintiffs received counterfeit textbooks purchased (in separate orders) from Excellentext and Text_Crew in the same package.  *See id.*

As a result of expedited discovery, Plaintiffs have learned that at least two Storefronts—Chavez Store and Mr Brown Store—are operated by the same individuals.  Am. Compl. ¶ 46(c), (i).  Before filing suit, Plaintiffs could not know this.  Similarly, Plaintiffs could not know that NBC operated both Excellentext and "nettextstore" on Amazon.  Moreover, textbooks are purchased by Amazon sellers from other Amazon sellers, only to be re-sold to others.  Am. Compl. ¶ 40.  For example, at least one Defendant has identified "nettextstore" on Amazon as the source of some of its inventory of Plaintiffs' textbook titles.  *See* Mustico Decl. ¶ 10.

In sum, Defendants' infringing sales on Amazon are inextricably intertwined, warranting joinder of Plaintiffs' claims.

**B.** **There Are Common Questions of Law and Fact Among the Claims Against Defendants.**

Contrary to NBC's argument otherwise, Plaintiffs' claims in this suit also satisfy the requirements for joinder because they involve common questions of law and fact.  As NBC

acknowledges, with respect to all Defendants, Plaintiffs will have to prove valid ownership or exclusive control of the copyrights and trademarks at issue, and that there has been an infringement of one of the exclusive rights reserved to copyright and trademark holders. *See First Time Videos,* 276 F.R.D. at 257-58 (finding common questions of copyright law to exist); *Voltage Pictures,* 818 F. Supp. 2d at 41 (same); *Call of the Wild,* at 770 F. Supp. 2d at 343 (same). *Cf.* Mot. at 13. Moreover, there is significant overlap among the Storefronts and both the trademarks and copyrights at issue. *See* Am. Compl., Exs. A, B.

NBC asserts that it may have unique defenses, including under the first-sale doctrine. *See* Mot. at 10. NBC does not say how any such defenses would be unique to it. More importantly, the first-sale doctrine—which concerns only items lawfully made—is not applicable to counterfeit textbooks. In any event, any unique factual or substantive legal defenses do not defeat joinder at this stage. *See Voltage Pictures*, 818 F. Supp. 2d at 41 (permitting joinder while recognizing potential for defendants to raise different legal or factual defenses).

There are also common questions of fact at issue. In particular, Plaintiffs' claims will involve common questions relating to 1) how the Amazon platform works, including how third-party sellers list, offer for sale, and sell textbooks on Amazon; 2) Amazon's distribution of sales proceeds to sellers; 3) the distribution of textbooks after a sale has been made, including by Amazon as part of its FBA service; 4) Amazon's storage of Defendants' textbook inventory; and 5) whether Defendants have sourced the counterfeit textbooks via the Amazon marketplace itself. In addition, there will be common questions of fact relating to Plaintiffs' investigation and collection of evidence regarding Defendants' infringing activity. *See First Time Videos,* 276 F.R.D. at 258 (noting questions relating to plaintiffs' methods of uncovering infringement will be the same for each Doe defendant); *Call of the Wild*, 770 F. Supp. 2d at 343 (same).

Accordingly, there are common questions of law and fact among the claims in suit.

**C.**      **Joinder of Defendants Here Has Served Efficiency and Economy for the Court and All Parties.**

The purpose of permissive joinder under Rule 20 is to promote efficient and inexpensive adjudication of disputes and to prevent multiple and duplicative lawsuits.  Asserting claims against Doe Defendants in this case served many benefits to the Court, Plaintiffs, third parties, and to Defendants.

First, Plaintiffs minimized to the extent they could both the judicial and administrative burden on the Court.  By filing a single action against Doe Defendants operating 21 different Storefronts, Plaintiffs avoided filing 21 separate lawsuits, all with *ex parte* requests for temporary restraining orders, expedited discovery, and orders to show cause.  Such *ex parte* requests must be filed the old-fashioned way, in person, and not electronically, which would have unduly burdened the Clerk's office.  By way of another example, the Clerk's Office would have been required to issue 42 separate Notices of Copyright and Trademark Claims to the Copyright Office and U.S. Patent and Trademark Office.  The 42 Notices would have largely duplicated each other as the copyrights and trademarks in suit significantly overlap among Defendants.  Judicial efficiency for the court includes not having to: 1) review 21 separate, but nearly identical complaints, memorandums of law in support of *ex parte* relief and the accompanying declarations and exhibits; 2) hear the same arguments from Plaintiffs and Amazon on the requested relief; and 3) decide whether to issue 21 separate injunctions on nearly identical facts.  A single action also avoided the possibility of the courts issuing disparate or conflicting injunctive relief affecting Plaintiffs, Defendants, and third parties.  In addition, Plaintiffs will soon move for default judgment against several Defendants.  Plaintiffs can do so by a single order to show cause and submission, and the

Court can make its determination without having to duplicate effort unnecessarily.[5]

Second, bringing a single action minimized any burden on third parties, such as Amazon, in complying with the injunctive relief and responding to expedited discovery.  In particular, Amazon was able to collect and produce responsive information relating to Defendants' Storefronts at once.  Amazon was not required to interpret and comply with potentially differing obligations in 21 different injunctions.  Amazon is also able to more efficiently coordinate the shipment of Defendants' inventory for Plaintiffs' inspection under the Expedited Discovery Order.  And Plaintiffs were able to consolidate their subpoena requests to financial institutions receiving proceeds from multiple Storefronts.

Third, Plaintiffs also benefited from the efficiencies resulting from a single action against Defendants.  The importance of these economies should not be underestimated.  Plaintiffs are among the most respected higher education textbook publishers.  Plaintiffs are waging an ongoing campaign against counterfeiting, in which they have no choice but to spend significant resources enforcing their rights against an ever-growing number of anonymous, online counterfeiters.  In *Voltage Pictures*, in permitting joinder, the Court recognized that "copyright owners have limited alternatives to obtain redress for infringement of their protected works other than such [Doe] lawsuits."  818 F. Supp. 2d at 42 (citing *Arista Records LLC v. Does 1-27,* 584 F. Supp. 2d 240, 252 (D. Me. 2008) ("Plaintiffs are entitled to protect their copyrighted material and it is difficult

---

[5] Plaintiffs and the Court also avoid certain procedural issues arising out of Plaintiffs' claims against anonymous online counterfeiters.  Plaintiffs have learned that at least two of the Storefronts are related to and operated by the same two individuals.  *See* Section II.A, *supra*.  Plaintiffs have had several similar instances in other cases, where they learn that two or more storefronts selling counterfeit textbooks, who Plaintiffs have identified in separate lawsuits, are actually operated by the same individual.  This creates a number of problems, including where there are overlapping copyrights and trademarks in suit (and thus duplicate claims), or where the individual is subject to conflicting injunctions.

to discern how else in this unique circumstance the Plaintiffs could act.")).  Likewise, in *Call of the Wild*, the district court acknowledged that severance would cause plaintiffs to "face significant obstacles in their efforts to protect their copyrights" from online pirates, which would "only needlessly delay their cases."  770 F. Supp. 2d at 344.  The court also noted that forcing plaintiffs "to pay the Court separate filing fees in each of [the] cases, [ ] would further limit their ability to protect their legal rights" and therefore would *not* be in the "interests of convenience and judicial economy, or secure a just, speedy, and inexpensive determination of the action."  *Id.* (internal quotations and citation omitted).

Finally, Defendants benefit from the economies created by a single action as well.  For example, Defendants can benefit from sharing costs and/or defense strategies.  *See Elektra Entm't Group*, 2004 U.S. Dist. LEXIS 23560, at *20 (declining to sever claims against non-moving Doe defendants because, *inter alia*, non-moving defendants may wish to litigate the case collectively as a cost-saving measure); *K-Beech, Inc. v. Doe*, No. 2:11-cv-358-FtM-36SPC, 2011 U.S. Dist. LEXIS 132834, at *20 (M.D. Fla. 2011) (noting that joinder of Doe Defendants accused of infringing the same copyrighted material "both promotes judicial efficiency and benefits the Defendants, who will be able to see the defenses, if any raised by other John Does").

Rather than being improper, asserting the claims against Defendants in a single action, as Plaintiffs have done here, has promoted efficiency and economy for the benefit of all parties.  *See London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 & n.7 (D. Mass. 2008) (consolidating cases against John Doe defendants to "ensure[] administrative efficiency for the Court, the plaintiffs, and the ISP, and [defendants]" and noting that the case against any defendant "will be individually considered for purposes of any rulings on the merits").

## **CONCLUSION**

For all the foregoing reasons, the Court should sever Plaintiffs' claims against NBC into a separate action.


Dated:  February 8, 2018                    Respectfully submitted,


                                             */s/ Kerry M. Mustico*
                                            Matthew J. Oppenheim
                                            Kerry M. Mustico
                                            OPPENHEIM + ZEBRAK, LLP
                                            5225 Wisconsin Ave. NW STE 503
                                            Washington, DC 20015
                                            (202) 480-2999
                                            matt@oandzlaw.com
                                            kerry@oandzlaw.com

                                            *Counsel for Plaintiffs*